JEFFREY M. MOVIT (SBN 349686)
Email: jeff@chaudhrylaw.com
CHAUDHRYLAW PLLC
87 North Raymond Avenue
Pasadena, CA 91103
Tel.: 212-785-5550
Fax: 212-898-9040

Attorney for Plaintiffs Artist Publishing Group, LLC;
Artist Partner Group, Inc.; and Release Global, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ARTIST PUBLISHING GROUP, LLC, a Delaware Limited Liability Company; ARTIST PARTNER GROUP, INC., a Delaware Corporation; and RELEASE GLOBAL, LLC, a California Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> CREATE MUSIC GROUP, INC., a Delaware Corporation; THE NATION, LLC, a Delaware Limited Liability Company, sometimes d/b/a Broke Records; LOWLY PALACE, LLC, a Delaware Limited Liability Company, and DOES 1-20, inclusive, <br><br> Defendants. | CASE NO. 25-cv-00509 <br><br> **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT** <br> 2. **VICARIOUS COPYRIGHT INFRINGEMENT** <br> 3. **UNJUST ENRICHMENT** <br> 4. **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS** <br><br> **[DEMAND FOR JURY TRIAL]** |

- 1 -
COMPLAINT

Plaintiffs Artist Publishing Group, LLC ("Artist Publishing Group"), Artist Partner Group, Inc. ("Artist Partner Group"), and Release Global, LLC ("Release Global") (collectively, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Create Music Group, Inc. ("Create" or "Create Music Group"), The Nation, LLC, sometimes d/b/a Broke Records ("The Nations"), Lowly Palace, LLC ("Lowly"), and Does 1–20 (collectively, "Defendants"), allege on personal knowledge as to their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      Create Music Group describes itself as "a record label, distribution company, and entertainment network." (Defendants The Nations and Lowly are subsidiaries of Create.) Create claims to have revolutionized the music industry by developing a new "business model." In truth, Create's "business model" is to steal the intellectual property and contractual rights of innocent rightsholders such as Plaintiffs. Specifcally, Create claims to own rights in musical compositions and sound recordings[1] that it does not actually own or control. Create then wrongfully collects royalties for those compositions and sound recordings to which it has no entitlement. There is nothing new or revolutionary about Create's brazen thievery.

2.      On June 25, 2024, Create announced that it had received "a $165 million

---

[1] Musical compositions and sound recordings "are separate works with their own distinct copyrights." *In re Cellco P'ship*, 663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009). A musical composition consists of rhythm, harmony, and melody, can be notated in sheet music, and can be performed by any musical performer with sufficient skill. *Rose v. Hewson*, No. 17-CV-1471, 2018 WL 626350, at *2 (S.D.N.Y. Jan. 30, 2018); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003); *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) *and aff'd*, 388 F.3d 1189 (9th Cir. 2004). A sound recording captures "the sound produced by . . . [a particular] performer's rendition of" a musical composition. *Newton*, 204 F. Supp. 2d at 1249-50.

investment led by private equity investment firm Flexpoint Ford."[2]  This investment round valued Create in the staggering amount of $1 billion.[3]  Create deceptively claims to have created this value by "leveraging" the intellectual property that Create "own[s]."[4]  However, Create's exorbitant valuation has been built off the back of its massive, willful copyright infringement and its widespread, tortious interference with third-party contracts.

3.     The three Plaintiffs are one record label, one distribution company, and one music publishing company that own the copyrights in, and/or have exclusive licenses for, musical compositions and sound recordings.  Collectively, Plaintiffs have invested significant resources by: (a) entering into exclusive contracts with accomplished recording artists and songwriters; and (b) developing, marketing, and licensing highly successful musical compositions and sound recordings.  Plaintiffs have brought this lawsuit to seek a remedy for the multiple ways in which Create and its subsidiaries have willfully infringed the copyrights in Plaintiffs' musical works and interfered with Plaintiffs' contracts.

4.     *First*, Create and its subsidiaries have falsely filed claims with YouTube in which Defendants baselessly assert that they own rights in sound recordings and

---

[2] https://createmusicgroup.com/news/create-music-group-at-1-billion-valuation-raises-165-million-investment-round/.

[3] https://www.musicbusinessworldwide.com/create-music-group-at-1-billion-valuation-raises-165-million/.

[4] https://createmusicgroup.com/news/create-music-group-at-1-billion-valuation-raises-165-million-investment-round/.

COMPLAINT

musical compositions that third parties have posted on YouTube.[5]  In truth, it is Plaintiffs, and not Defendants, who own the rights in them.  Based upon Defendants' false ownership claims, YouTube mistakenly paid Defendants royalties for these sound recordings and musical compositions—but these royalties should have been paid to Plaintiffs.  Through this lawsuit, Plaintiffs seek to recover those royalties.

5.      ***Second***, Create and its subsidiaries have made a weak and unavailing attempt to justify their copyright infringement of Plaintiffs' recordings and compositions by entering into bogus "contracts" with certain artists who created these recordings and compositions.  According to Create and its subsidiaries, these "contracts" purportedly give them the right to collect royalties for these works.  However, as Defendants are fully aware, their "contracts" are invalid.

6.      Before these bogus "contracts" were signed, these artists had already signed exclusive agreements with Plaintiffs, which agreements accord Plaintiffs the copyrights and/or exclusive licenses in these works.  At all relevant times, Defendants have known of Plaintiffs' preexisting rights and exclusive agreements with these artists.  By way of example and without limitation, the copyright management information which Plaintiffs include when they upload tracks from these artists placed Defendants on notice of Plaintiffs' rights.

7.      Nonetheless, Create and its subsidiaries wrongfully induced these artists to sign these bogus "contracts" by falsely asserting that Plaintiffs were purportedly doing a bad job exploiting their works and leaving money on the table (thereby damaging Plaintiffs' reputation).  Create and its subsidiaries further falsely induced these artists by telling them that these "contracts" do not violate Plaintiffs' rights

---

[5] A record label, distributor, or music publisher makes a "claim" with YouTube by filing a registration with YouTube, in which that party asserts it owns the right to collect specified royalty streams for a particular musical track.  Thereafter, when that track is streamed by users, YouTube pays royalties to the party or parties who filed registrations claiming rights in that track.

COMPLAINT

1  (which Defendants know to be untrue).

2      8.    Defendants communicated directly with at least some of these artists to

3  induce them to sign these bogus "contracts," even though Defendants were fully

4  aware that these artists have attorneys and managers who handle their business and

5  legal affairs.  Plaintiffs are informed and believe that artists who Create directly and

6  improperly induced to sign bogus "contracts" include the individuals professionally

7  known as Jay Hound, Jay5ive, and Sdot Go.

8      9.    By entering into these bogus "contracts," Create and its subsidiaries have

9  tortiously interfered with Plaintiffs' valid and preexisting contractual rights.

10  Plaintiffs are entitled to substantial damages—including punitive damages—from

11  Defendants as a result.

12      10.    **_Third_**, Create and its subsidiaries have wrongfully uploaded Plaintiffs'

13  sound recordings and musical compositions to digital service providers such as

14  Spotify, and Defendants have wrongfully collected royalties when they are streamed.

15  Create and its subsidiaries have zero copyright ownership interests in these sound

16  recordings and musical compositions.  Rather, the copyrights in them are owned

17  and/or controlled by Plaintiffs.  By unlawfully uploading these works, and collecting

18  royalties for them, Create and its subsidiaries are engaging in willful infringement of

19  Plaintiffs' copyrights.

20      11.    **_Fourth_**, Defendants have engaged in willful copyright infringement of a

21  musical composition owned by Plaintiff Artist Publishing Group entitled "Diamondz

22  n Roses."  Specifically, Defendants released and otherwise exploited a track entitled

23  "Montagem Diamante Rosa" which flagrantly copies significant, protectable

24  expression from "Diamondz n Roses."  Plaintiffs confronted Defendants about this

25  infringement, and they demanded that Defendants cease and desist exploiting

26  "Montagem Diamante Rosa."  However, rather than abide by this demand,

27  Defendants instead released a new, revised version of "Montagem Diamante Rosa"

28

1    that also plagiarizes, and thereby infringes the copyright in, "Diamondz n Roses."

2    This brazen behavior is typical of Defendants' utter disregard for Plaintiffs' rights,

3    and their proclivity to violate copyright law and ethical business practices.  The

4    multiple infringing versions of "Montagem Diamante Rosa" are enormously

5    successful.  They have been streamed approximately 200 million times, and they have

6    provided Defendants with massive direct and indirect profits.  In this lawsuit, Artist

7    Publishing Group seeks to recover all such unlawfully obtained profits.

8        12.    Defendants' thievery must stop now.  Plaintiffs should be fully

9    compensated for the enormous harms Defendants have caused them.  Moreover, the

10   direct and indirect profits which Defendants wrongfully usurped through their

11   unlawful conduct should be disgorged and paid to Plaintiffs.  Plaintiffs should also be

12   compensated by Defendants for the increase in their market valuation that is

13   attributable to their theft of Plaintiffs' intellectual property.

14                    **JURISDICTION AND VENUE**

15       13.    This is a civil action in which Plaintiffs seek damages and injunctive

16   relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*

17       14.    This Court has original subject matter jurisdiction over Plaintiffs'

18   copyright infringement claims pursuant to 28 U.S.C. § 1331 and 1338(a).

19       15.    This Court has supplemental jurisdiction over Plaintiffs' restitution

20   claim pursuant to 28 U.S.C. § 1367.

21       16.    This Court has personal jurisdiction over Defendants because

22   Defendants maintain their principal place of business within California and because

23   Defendants conduct systematic and continuous business in California.  This Court

24   also has personal jurisdiction over Defendants because Defendants have committed a

25   substantial part of the wrongful acts alleged in the Complaint within this district.

26       17.    Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) and

27   § 1400(a) because a substantial part of the acts of infringement, and other events and

28

omissions complained of herein occur, or have occurred, in this district, and this is a district in which Defendants reside or may be found.

## THE PARTIES

18.     Plaintiff Artist Publishing Group is a Delaware limited liability company with its principal place of business in Los Angeles, California.  It is a music publishing company.

19.     Plaintiff Artist Partner Group is a Delaware corporation with its principal place of business in Los Angeles, California.  It is a record label.

20.     Plaintiff Release Global is a California limited liability company with its principal place of business in Los Angeles, California.  It is a distribution company.

21.     Defendant Create Music Group is a Delaware corporation with its principal place of business in Los Angeles, California.

22.     Defendant The Nations is a Delaware limited liability company with its principal place of business in Los Angeles, California.  The Nations owns and operates an unincorporated record label known as Broke Records.  Create acquired a majority interest in The Nations in or about June 2022.  The Nations has claimed in the press that its business model was "inspired" by Plaintiffs' success in the music industry; in truth, however, the business model for The Nations is stealing Plaintiffs' intellectual property.

23.     Defendant Lowly is a Delaware corporation with its principal place of business in Los Angeles, California.  Create acquired Lowly in or about June 2022.

24.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names (the "Doe Defendants").  Plaintiffs will seek leave of Court to amend this Complaint to state their true names and capacities when they have been ascertained.  The Doe Defendants are liable to Plaintiffs as a result of their participation in all or some of the

1  acts hereinafter set forth.  Create, The Nations, Lowly, and the Doe Defendants are

2  referred to collectively herein as "Defendants."

3      25.    At all times mentioned in this Complaint, each of the Defendants was the

4  agent and/or alter ego of each of the other Defendants and, in doing the things alleged

5  in this Complaint, was acting within the course and scope of such agency.

6              **PLAINTIFFS' BUSINESSES AND THEIR COPYRIGHTS**

7      26.    Artist Publishing Group is a renowned music publisher.  Artist

8  Publishing Group invests substantial money, time, effort, and talent to develop,

9  produce, publish, acquire, license, and otherwise exploit the copyrights in musical

10  compositions, including some of the most popular musical compositions in the world.

11     27.    Artist Publishing Group owns and/or exclusively licenses the copyrights

12  in musical compositions, including the compositions listed in **Exhibit A**.  All of the

13  musical compositions listed in **Exhibit A** have been registered with the U.S.

14  Copyright Office.  As the owner of copyrights in these musical compositions, Artist

15  Publishing Group possesses the exclusive rights, among other things, to reproduce

16  them in copies or phonorecords, to adapt them, to distribute copies or phonorecords

17  of them to the public, to perform them publicly, and to license these exclusive rights

18  including on television and over the Internet.

19     28.    Artist Partner Group is a highly respected, established record label and

20  Release Global is a new distribution company.  They invest substantial money, time,

21  effort, and talent to develop, produce, publish, acquire, license, and otherwise exploit

22  the copyrights in sound recordings, including some of the most popular sound

23  recordings in the world.

24     29.    Artist Partner Group and Release Global own and/or exclusively license

25  the copyrights in sound recordings, including the sound recordings listed in **Exhibit**

26  **B** (the "Copyrighted Recordings").  All of the sound recordings listed in **Exhibit B**

27  have been registered with the U.S. Copyright Office.  As the owner or exclusive

28

- 8 -
COMPLAINT

licensee of copyrights in these sound recordings, Artist Partner Group and Release Global possess the exclusive rights, among other things, to reproduce the Copyrighted Recordings in copies, to adapt them, to distribute copies to the public, to perform the Copyrighted Recordings publicly by means of a digital audio transmission, and to license these exclusive rights including on television and over the Internet.

## DEFENDANTS' FALSE CLAIMS OF RIGHTS TO YOUTUBE

30.    Defendants actively look for popular sound recordings and musical compositions that have been posted by third parties on YouTube, and for which no record label, music publisher and/or distributor has yet made a claim of rights to YouTube.  Defendants then falsely file claims with YouTube in which Defendants baselessly assert that they own rights in these sound recordings and compositions.  In truth, it is Plaintiffs, and not Defendants, who own the rights in these sound recordings and compositions.  Based upon Defendants' false ownership claims, YouTube mistakenly paid Defendants royalties for these songs—but these royalties should have been paid to Plaintiffs.  Tracks for which Defendants have wrongly claimed rights, and taken royalties which properly belong to Plaintiffs, are included within the works set forth on **Exhibits A and B** to the Complaint.

## DEFENDANTS' MASSIVE
## INFRINGEMENTS OF PLAINTIFFS' COPYRIGHTS

31.    Defendants wrongfully have uploaded to digital service providers—without limitation Spotify, Apple Music and YouTube—and otherwise distributed and exploited, tracks included within the works set forth on **Exhibits A and B** to this Complaint.  Defendants also have wrongfully collected royalties when these tracks are streamed and/or otherwise exploited.  Defendants' actions are wrongful because they have zero copyright ownership interests in these songs.  Rather, the copyrights in the musical compositions set forth on **Exhibit A** are owned by and/or exclusively

licensed to Artist Publishing Group, and the copyrights in the sound recordings set forth on **Exhibit B** are owned by and/or exclusively licensed to Artist Partner Group and Release Global.  By unlawfully uploading these works, and collecting royalties for them, Defendants are engaging in willful infringement of Plaintiffs' copyrights.

## DEFENDANTS ARE TORTIOUSLY
## INTERFERING WITH PLAINTIFFS' CONTRACTS

32.    Defendants have speciously attempted to justify their copyright infringement of Plaintiffs' recordings and compositions by entering into bogus "contracts" with some of the artists who created these recordings and compositions.

33.    As Defendants are aware, their "contracts" with these artists are invalid. This is because, before these "contracts" were signed, the artists had already signed exclusive agreements with Plaintiffs, which agreements accord Plaintiffs the exclusive rights to collect royalties in these works.  At all relevant times, Defendants have known of Plaintiffs' agreements with these artists.  Defendants' wrongful actions in inducing the artists to sign these bogus "contracts," Defendants have tortiously interfered with Plaintiffs' contractual relations.

34.    Plaintiffs' contracts with which Defendants have tortiously interfered include the following:

  a.    Agreement made and entered into as of February 9, 2021 by and between Artist Partner Group and Christopher Simms Jr. p/k/a "Cico P."

  b.    Agreement dated as of May 5, 2023 between Release Global and Sweepers Ent LLC, for the music of artists including Joseph Abreu p/k/a "Jay5ive," Jaquan Johnson p/k/a "Jay Hound," and Shadon Burnell p/k/a "Sdot Go."

  c.    Agreement dated as of June 13, 2023 between Artist Publishing Group, Sweepers Ent LLC, and Shadon Burnell p/k/a "Sdot Go."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   d. Agreement dated as of November 20, 2023 between Artist Partner Group and Khari Jahmill Hoard p/k/a "Baby Kia," with accompanying Guardian's Assent and Guaranty.

   e. Agreement dated as of December 8, 2023 between Artist Partner Group and Jaquan Johnson p/k/a "Jay Hound."

   f. Agreement dated as of December 8, 2023 between Artist Publishing Group and Jaquan Johnson p/k/a "Jay Hound."

   g. Agreement dated as of February 2, 2024 between Artist Partner Group and Alexander Gumuchian p/k/a "bbno$."

## CREATE WILLFULLY INFRINGES THE COMPOSITION "DIAMONDZ N ROSES" BY RELEASING TWO TRACKS THAT PLAGAIRIZE IT

35. On March 23, 2023, Artist Partner Group released a sound recording entitled "Diamondz n Roses" by the artist professionally known as "VaporGod" (hereafter, the "Diamondz Recording"). Artist Partner Group is the exclusive licensee in perpetuity of the Diamondz Recording. Defendants do not have any license, authorization, permission, or consent to use the Diamondz Recording.

36. Artist Publishing Group is the publisher of, and is an owner of the copyright in, the musical composition embodied in the Diamondz Recording (hereafter, the "Diamondz Composition"). Defendants do not have any license, authorization, permission, or consent to use the Diamondz Composition.

37. On February 28, 2024, it came to Plaintiffs' attention that Defendants and/or their agents reproduced, distributed, and/or publicly performed (and/or caused to be reproduced, distributed, and/or publicly performed) a substantial and copyrightable portion of the Diamondz Composition without Plaintiffs' authorization in a sound recording entitled "Montagem Diamante Rosa" (hereafter, the "Initial Montagem"). According to public records, the sound recording of the Initial

Montagem was released by Broke Records (*i.e.*, The Nations) and the composition of the Initial Montagem is published by Create.

38. As set forth in the transcriptions below, the Diamondz Composition and the Initial Montagem are so strikingly similar that it is **impossible** that the Initial Montagem was created independently of the Diamondz Composition.



The transcription above reflects the two-bar synth melody of the two compositions, which is repeated throughout each of them. As set forth above, both compositions contain the **identical** notes (E-E-A-B-G-A-E-E-E-A-B-D-A-B-E) set to the **identical** melodic rhythm (among other similarities). This is blatant, outright plagiarism—pure and simple.

39. On February 28, 2024, Plaintiffs provided written notice to Defendants that the Initial Montagem constitutes an infringement of Plaintiffs' rights and demanded that Defendants immediately cease and desist from any further use of "Diamondz n Roses."

40. In response to Plaintiffs' written notice, Defendants did not cease their infringing conduct. Rather, Defendants hatched a failed scheme to attempt to confuse Plaintiffs and thereby try to avoid liability. Pursuant to this scheme, Defendants quietly replaced the Initial Montagem on digital service providers with a revised version of the track (hereinafter, the "Revised Montagem"). Consistent with Defendants' other bad-faith action, the Revised Montagem also plagiarizes the Diamondz Composition. Like its predecessor, the Revised Montagem is released by The Nations and published by Create. And, just like its predecessor, the Revised

Montagem blatantly copies protectable expression in, and willfully infringes, the Diamondz Composition. Indeed, the Revised Montagem contains **two** separate melodies which each plagiarize the Diamondz Composition (hereafter, the "First Plagiarized Melody" and the "Second Plagiarized Melody").

41.    ***The First Revised Montagem Plagiarized Melody.***  The Revised Montagem begins (at 0:00) with a 4-bar synth melody that copies the synth melody at issue in the Diamondz Composition. The melodic rhythm (*i.e.*, the rhythmic duration and the metric placement) in all fifteen notes of bars 1-2 of the Revised Montagem is identical to the melodic rhythm of the melody at issue in the Diamondz Composition. Moreover, as demonstrated by the red notes in the transcription below, in bars 1-2 of the Revised Montagem, ten of the fifteen notes are identical in pitch, rhythmic duration, and metric placement as the corresponding notes in the Diamondz Composition.

**Diamondz n Roses / Revised Montagem, Bars 1-2 Synth (Identical Notes Highlighted)**



In addition, in bars 3-4 of the Revised Montagem, the melodic rhythm in all fifteen notes is identical to the melodic rhythm of the melody at issue in the Diamondz Composition and seven of the fifteen notes are identical in pitch, rhythmic duration, and metric placement as the corresponding notes in the Diamondz Composition as demonstrated by the red notes in the transcription below:

**Diamondz n Roses / Revised Montagem, Bars 3-4 Synth (Identical Notes Highlighted)**



The First Plagiarized Melody in the Revised Montagem is repeated from 0:00 - 0:30, 0:44 - 0:59, and from 1:21 until the end of the song.

42.    ***The Second Revised Montagem Plagiarized Melody.***  As set forth below, the Second Plagiarized Melody contains twenty-three notes—and each and every one of them is copied from the Diamondz Composition.  All of the twenty-three notes in the Second Plagiarized Melody are identical in pitch, rhythmic duration, and metric placement to corresponding notes in the Diamondz Composition.

**Diamondz n Roses / Revised Montagem at 0:30 Synth**



**Diamondz n Roses / Revised Montagem at 0:33 Synth**



The Second Plagiarized Melody in the Revised Montagem is repeated from 0:30 - 0:44 and from 0:59 - 1:13.  Starting at 1:21, this second copied melody occurs in conjunction with the First Plagiarized Melody.

43.     Plaintiffs have demanded that Defendants cease and desist from any further exploitations of the Revised Montagem.  However, Defendants have ignored this demand and thus continue to willfully infringe the copyright in the Diamondz Composition.

## CLAIMS FOR RELIEF

## COUNT I – Direct Copyright Infringement (Against All Defendants)

44.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 43 as if fully set forth herein.

45.     Defendants have engaged, and continue to engage, in the unauthorized reproduction, adaptation, distribution, and public performance of various copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including those copyrighted works listed in **Exhibits A and B**, and many others.  The foregoing activity constitutes direct infringement by Defendants in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

46.     Each of the Defendants is liable for their role in the distribution chain at issue, including: (i) involvement in the creation of unauthorized infringing works; (ii) permitting and/or directing other entities to distribute or monetize any unauthorized infringing works; (iii) permitting and/or directing the public performance of unauthorized infringing works on streaming services; (iv) permitting and/or directing the creation of additional infringing works such as accompanying music videos; and (v) the provision of any infringing sound recording and music publishing services.

47.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

48.     As a direct and proximate result of Defendants' infringement of

Plaintiffs' copyrights, Plaintiffs are entitled to damages under the Copyright Act in an amount no less than $10 million.  Plaintiffs are entitled to statutory damages for qualifying works, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendants' direct and indirect profits from infringement, as will be proven at trial.

49.    Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

50.    Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting further infringements of their exclusive rights under copyright.

## COUNT II – Vicarious Copyright Infringement (Against Create)

51.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 50 as if fully set forth herein.

52.    Defendant Create Music Group's subsidiaries—including The Nations/Broke Records and Lowly—have reproduced, distributed, adapted, and publicly performed, and continue to reproduce, distribute, adapt, and publicly perform, without authorization, various copyrighted works for which Plaintiffs are the legal or beneficial copyright owners, including copyrighted works listed in **Exhibits A and B**, and many others.  The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501 *et seq.*

53.    Create Music Group is liable as a vicarious copyright infringer for the direct infringement of its subsidiaries—including The Nations/Broke Records and Lowly—as described above.  Create Music Group has the right and ability to

supervise and control the infringing activities that occur, and at all relevant times, has derived direct and substantial financial benefits from the infringement of Plaintiffs' copyrighted works occurring through the acts of its subsidiaries—including The Nations/Broke Records and Lowly.  Create Music Group has knowledge of, and substantial, continuing involvement with, the infringing acts of its subsidiaries. Nevertheless, Create Music Group refused, and continues to refuse, to take the steps reasonably available to it to stop or limit the infringement.

54.    As a result, Create Music Group is vicariously liable for the unlawful infringement of Plaintiffs' copyrighted works by its subsidiaries, including works listed in **Exhibits A and B** hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

55.    The infringement of Plaintiffs' rights in each of their copyrighted works constitutes a separate and distinct act of infringement.

56.    Create Music Group's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' rights.

57.    As a direct and proximate result of Create Music Group's infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages for qualifying works, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

58.    Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Create Music Group's direct and indirect profits from infringement, as will be proven at trial.  Plaintiffs are further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

59.    Create Music Group's conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money, such that Plaintiffs have no adequate

remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent

injunction prohibiting further infringements of their exclusive rights under copyright.

### COUNT III –Restitution for Defendants' Unjust Enrichment (Against All Defendants)

60.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

through 59 as if fully set forth herein.

61.    In Counts I and II of this Complaint, Plaintiffs seek relief under the

Copyright Act for the wrongful actions of Defendants which include—but are not

limited to—filing claims with YouTube that falsely assert ownership of rights in

Plaintiffs' sound recordings and musical compositions, and then wrongfully

collecting royalties from YouTube for them (the "Wrongful YouTube Actions").

62.    If the Court finds that Defendants' Wrongful YouTube Actions do not

give rise to liability under the Copyright Act, then, in the alternative, Plaintiffs seek

relief in the form of restitution for Defendants' unjust enrichment from the Wrongful

YouTube Actions.  Specifically, Plaintiffs seek a full disgorgement of all direct and

indirect profits that Defendants received from the unlawful diversion of earnings

from sound recordings and musical compositions in which Plaintiffs hold rights.

63.    Through the Wrongful YouTube Actions, Defendants are acting

fraudulently, maliciously, oppressively, and intentionally.  This provides ample

grounds for an award of punitive and exemplary damages in connection with

Plaintiffs' claim of restitution in a sum to be determined at trial, but in excess of $30

million.

### COUNT IV – Tortious Interference With Contractual Relations (Against All Defendants)

64.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

through 63 as if fully set forth herein.

65.    Plaintiffs have valid and existing contracts with the following third

1   parties: Sweepers Ent LLC, Joseph Abreu p/k/a "Jay5ive," Jaquan Johnson p/k/a

2   "Jay Hound," Shadon Burnell p/k/a "Sdot Go," Khari Jahmill Hoard p/k/a "Baby

3   Kia," and Alexander Gumuchian p/k/a "bbno$."

4       66.   Defendants had knowledge of these contracts.

5       67.   Defendants committed intentional acts designed to induce a breach

6   and/or disrupt Plaintiffs' contractual relationships.

7       68.   Actual breaches of the contracts have resulted from these breaches.

8       69.   Plaintiffs have incurred damages as a result of this conduct in a sum to

9   be determined at trial.

10      70.   Through their contractual interference, Defendants are acting

11  fraudulently, maliciously, oppressively, and intentionally.  This provides ample

12  grounds for an award of punitive and exemplary damages in a sum to be determined

13  at trial.

14                        **PRAYER FOR RELIEF**

15      WHEREFORE, Plaintiffs pray for judgment from this Court against

16  Defendants as follows:

17      a.   For a declaration that Defendants have willfully infringed musical works

18           owned and/or controlled by Plaintiffs in violation of the Copyright Act;

19      b.   For statutory damages for qualifying works pursuant to 17 U.S.C. §

20           504(c), in an amount up to the maximum provided by law, arising from

21           Defendants' willful violations of Plaintiffs' rights under the Copyright

22           Act; or, in the alternative, at Plaintiffs' election, Plaintiffs' actual

23           damages pursuant to 17 U.S.C. § 504(b), including Defendants' profits

24           from infringement, in an amount to be proven at trial; in all events, in an

25           amount no less than $30 million;

26      c.   For such equitable relief under Title 17, Title 28, and/or the Court's

27           inherent authority as is necessary to prevent or restrain infringement of

28

                        - 19 -
                        COMPLAINT

Plaintiffs' copyrights and/or other rights in the musical works, including a permanent injunction requiring that Defendants and their officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing or materially contributing to or participating in the infringement of any of Plaintiffs' exclusive copyright rights, including without limitation in the musical works listed in **Exhibits A and B**;

d.    For the disgorgement of all direct and indirect profits received by Defendants for the unlawful diversion of earnings from Plaintiffs' musical works for which Plaintiffs have exclusive rights and have provided no licenses to Defendants, plus exemplary and punitive damages;

e.    For an award of exemplary and punitive damages for the intentional and tortious interference with Plaintiffs' contracts in a sum in excess of $30 million;

f.    For an award of Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

g.    For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

h.    For such other relief and further relief as the Court deems proper.

DATED: January 21, 2025

*/s/ Jeffrey M. Movit*
JEFFREY M. MOVIT

COMPLAINT

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all claims and issues so triable in this action.

DATED: January 21, 2025

/s/ *Jeffrey M. Movit*

JEFFREY M. MOVIT

COMPLAINT